**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 21 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MELTON PIETROWSKI,

      Plaintiff-Appellant,

v.

TOWN OF DIBBLE, shown on
petition as The Town Council of
Dibble, OK; RONNIE JACKSON,

      Defendants-Appellees,

and

MCCLAIN COUNTY; DWAYNE
ANDERSON,

      Defendants.

No. 97-6012

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 94-CV-417)

---

Submitted on the briefs:

Melton Pietrowski, pro se.

David W. Lee, Ambre C. Gooch, of Comingdeer & Lee, Oklahoma City,
Oklahoma, for Defendants-Appellees.

---

Before PORFILIO and LUCERO, Circuit Judges, and MARTEN,[*] District Judge.

---

PORFILIO, Circuit Judge.

---

Plaintiff appeals the district court's grant of summary judgment in favor of defendants Ronnie Jackson and the Town of Dibble. Because plaintiff's malicious prosecution claim abated upon the death of defendant Jackson and plaintiff failed to show that Jackson acted pursuant to an official policy of the Town of Dibble, we affirm.[**]

On January 19, 1991, plaintiff was arrested by defendant Jackson, the Chief of Police of Dibble, Oklahoma, for speeding and driving under the influence (DUI). After a preliminary hearing, plaintiff was bound over for trial on a felony DUI charge. He remained in jail until March 29, 1991, when he was released on bail. In September 1992, plaintiff was tried and acquitted of the DUI charge.

On March 24, 1994, plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendant Jackson lacked probable cause to arrest

---

[*]     The Honorable J. Thomas Marten, District Judge, United States District Court for the District of Kansas, sitting by designation.

[**]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

him for a DUI, and that the officer actually arrested him to separate him from an intoxicated minor who was a passenger in his vehicle. Plaintiff sought damages from several defendants for his arrest without probable cause, for events that occurred during the arrest and booking process, and for his alleged malicious prosecution.

The district court dismissed all of plaintiff's claims as barred by the statute of limitations, except his malicious prosecution claim. Plaintiff has not appealed these dismissals. The court then granted summary judgment on the malicious prosecution claim, holding that the preliminary hearing finding of probable cause collaterally estopped plaintiff from raising his claim, or, alternatively, that the probable cause determination broke the chain of causation between Jackson's conduct and plaintiff's prosecution. This appeal followed.

We review summary judgment rulings de novo, applying the same standard as the district court. See Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 851 (10th Cir. 1996). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When a moving party makes a properly supported summary judgment motion, the nonmoving party has the burden of showing a genuine issue for trial, "by any of

the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Plaintiff first argues that the district court erred in granting summary judgment on his malicious prosecution claim, brought against defendant Jackson in his personal capacity, because the probable cause determination neither estopped plaintiff from raising the claim in this action nor broke the chain of causation. We need not determine the preclusive effect of the state court's probable cause determination because, in any event, plaintiff's malicious prosecution cause of action abated upon defendant Jackson's death. See United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994) ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.") (quotations omitted).

The federal civil rights statutes do not address whether a cause of action abates upon the death of a party. In Robertson v. Wegmann, 436 U.S. 584, 588-90 (1978), the Supreme Court held that the survival of a § 1983 action is determined by looking to state law, so long as it is not inconsistent with federal law or the Constitution. The Court in Robertson concluded that a state statute, abating a malicious prosecution claim upon the death of a plaintiff not survived

-4-

by certain family members, was not inconsistent with the civil rights statutes or the United States Constitution. See id. at 590-94.

Oklahoma law specifically provides that a malicious prosecution cause of action abates upon the death of a defendant. See Okla. Stat. tit. 12, § 1052 ("No action pending in any court shall abate by the death of either or both the parties thereto, except an action for libel, slander or malicious prosecution, which shall abate by the death of the defendant."). Applying Robertson, it does not appear that § 1052 is inconsistent with the civil rights statutes or the Constitution. The statute is not "generally inhospitable to survival of § 1983 actions," 436 U.S. at 594, as it preserves all actions except libel, slander, and malicious prosecution, see id. at 591. It also does not adversely affect § 1983's policy of preventing official illegality, as it is unreasonable to assume that a defendant's conduct will be influenced by the possibility he or she may die before litigation is resolved. See id. at 592.

Although § 1052 does adversely affect § 1983's goal of compensating injured parties, the effect is limited in scope, abating only those libel, slander, or malicious prosecution actions in which a defendant dies before a verdict is rendered. Further, in light of the nineteenth century common law rule extinguishing all personal injury claims upon either party's death, see id. at 589, the statute actually serves to further § 1983's compensation goal by providing for

the survival of such actions in most cases.  The Supreme Court has given deference to state survivorship statutes reversing the common law rule.  See id. at 589-90 (holding state survivorship statutes "provide[] the principal reference point in determining survival of civil rights actions"); Moor v. County of Alameda, 411 U.S. 693, 703 n.14 (1973) (noting propriety of adopting state survivorship statute reversing common law rule).

Upon comparing the policies behind § 1052--that claims for malicious prosecution, libel, and slander are so personal as not to survive the defendant's death--and § 1983's general policy of compensating victims, they do not appear to be inconsistent.  Cf. Board of Regents v. Tomanio, 446 U.S. 478, 487-91 (1980) (holding that state statute of limitations not inconsistent with civil rights statute even though it barred action, as state's policy determination regarding staleness of claim not inconsistent with federal remedy).  We conclude that Oklahoma's abatement statute does not so undermine the overall goal of compensating victims as to be inconsistent with § 1983.  As the Court stated in Robertson:

> A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff . . . .  But § 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby.

Id. at 593.

-6-

Plaintiff also argues that summary judgment should not have been granted in favor of the Town of Dibble because he sued Jackson in his official capacity as well, seeking to hold the Town of Dibble liable for its lack of care in hiring and training Jackson. Plaintiff's complaint does not clearly present this claim, however--the allegation of inadequate hiring and training is made only within his untimely intentional infliction of emotional distress claim.

An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Even construing the complaint broadly to include an official capacity claim, plaintiff has not presented any evidence of inadequate hiring or training procedures to withstand the Town of Dibble's summary judgment motion. A government entity may not be held liable under a respondeat superior or vicarious liability theory, but must be shown to have contributed to the constitutional violation through execution of its policy or custom. See Board of County Comm'rs v. Brown, 117 S. Ct. 1382, 1388 (1997). Although liability may be premised on an entity's inadequate hiring or training of an employee, the plaintiff must show that the entity's decision "reflect[ed] deliberate indifference to the risk that a violation of a particular constitutional or statutory right [would] follow." Id. at 1392-94 (examining § 1983 liability for

inadequate hiring practices); <u>City of Canton v. Harris</u>, 489 U.S. 378, 388-92 (1989) (examining § 1983 liability for inadequate training).

In response to defendants' motion for summary judgment, plaintiff failed to present any evidence showing that the Town of Dibble, in hiring and training defendant Jackson, was deliberately indifferent to an obvious risk that Jackson would maliciously prosecute plaintiff. Further, plaintiff's Rule 56(f) motion did not identify any evidence which would establish such deliberate indifference. <u>See</u> R. III and attached exhibits. Therefore, summary judgment was appropriate in favor of the Town of Dibble.

Plaintiff has filed a motion requesting this court to hold his custodian in contempt for failing to make payments on plaintiff's filing fee obligation out of plaintiff's account. While we deny this motion, we note that plaintiff has authorized his custodian to make payments, and we hereby direct the custodian to forward the authorized payments as ordered until plaintiff's filing fee obligation is satisfied.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED. The mandate shall issue forthwith.